Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/30/2017 09:12 AM CDT

In re Interest of Becka P. et al., children
under 18 years of age.
State of Nebraska, appellee, v. Robert P.
and Veronica M., appellants.

___ N.W.2d ___

Filed April 7, 2017.    Nos. S-16-646 through S-16-648.

1. **Juvenile Courts: Jurisdiction.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.

2. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.

3. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

4. **Final Orders: Appeal and Error.** Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), the three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered.

5. **Juvenile Courts: Final Orders: Appeal and Error.** A proceeding before a juvenile court is a "special proceeding" for appellate purposes.

6. **Final Orders: Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.

7. **Juvenile Courts: Parental Rights: Final Orders: Time.** Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the

length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed.

8. **Constitutional Law: Parental Rights.** Parents have a fundamental liberty interest in directing the education of their children.

9. **Parental Rights: Final Orders: Time: Appeal and Error.** Orders which temporarily suspend a parent's custody, visitation, or education rights for a brief period of time do not affect a substantial right and are therefore not appealable.

10. **Parental Rights: Final Orders: Time.** An order appointing an educational surrogate which has no limitation on its duration or scope is not a temporary order, but, rather, one which affects the parents' substantial right to direct the education of their child.

11. **Jurisdiction: Appeal and Error.** Generally, once an appeal has been perfected to an appellate court, the trial court is divested of its jurisdiction to hear a case involving the same matter between the same parties; however, there is statutory authority allowing the juvenile court to retain or continue jurisdiction while appeals are pending.

12. **Juvenile Courts: Jurisdiction: Parental Rights: Appeal and Error.** Although a juvenile court retains jurisdiction over a juvenile while an appeal is pending, such continuing jurisdiction is not without limits; for example, the continuing jurisdiction of a juvenile court pending an appeal does not include the power to terminate parental rights.

13. **Juvenile Courts: Jurisdiction: Final Orders: Appeal and Error.** Pending an appeal from an adjudication, the juvenile court does not have the power to enter a permanent dispositional order.

14. **Juvenile Courts: Jurisdiction: Appeal and Error.** The extent of the juvenile court's jurisdiction over a juvenile while an appeal is pending must be determined by the facts of each case.

15. ____: ____: ____. A juvenile court has continuing jurisdiction to issue and rule upon an order to show cause seeking enforcement of a previous order while the order of adjudication is pending on appeal.

16. **Juvenile Courts: Contempt.** Juvenile courts, whether separate juvenile courts or county courts sitting as juvenile courts, are courts of record with the statutory authority to punish contemptuous conduct.

Appeals from the County Court for Garden County: Randin Roland, Judge. Affirmed.

Michael R. Snyder, of Snyder & Hilliard, P.C., L.L.O., for appellants.

Philip E. Pierce, Garden County Attorney, for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Stacy, J.

Robert P. and Veronica M. appeal from orders of the county court for Garden County, sitting as a juvenile court, appointing an "educational surrogate" after Robert and Veronica refused to complete consent forms necessary to authorize speech and language and early childhood development assessments previously ordered by the court. We affirm.

## FACTS

Robert and Veronica are the parents of Becka P.; Robert P., Jr. (Robert Jr.); and Thomas P. In December 2015, the State filed juvenile petitions, alleging the children—who were ages 4, 2, and 1, respectively—came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2015) due to the faults and habits of their parents. The cases were consolidated for trial, and the juvenile court entered orders finding the allegations of the petitions were true as to all three children. The orders of adjudication placed custody of the children with the Nebraska Department of Health and Human Services (DHHS) and, among other things, ordered a "language and speech assessment" for Becka and an "early childhood development assessment" for Robert Jr. and Thomas. All assessments were to be conducted on the children by an "Educational Services Unit" (ESU).

The parents appealed the adjudication orders in all three cases. The appeals were consolidated, and on October 19, 2016, the Nebraska Court of Appeals affirmed the adjudications in an unpublished memorandum opinion in cases Nos. A-16-351 through A-16-353. The mandate issued November 23.

While the parents' appeals were pending before the Court of Appeals, the county attorney charged with enforcing court orders filed an "Affidavit and Application for Order to Show Cause" in the juvenile court. This application asked that the parents and DHHS be ordered to appear and show cause why

they should not be held in contempt for failing to comply with the assessments previously ordered by the court. The record indicates the court issued an order to show cause in each of the three cases and consolidated the matters for purposes of the hearing.

A show cause hearing was held in May 2016. Evidence introduced by the State showed the parents had signed the informed consent forms needed by the ESU to proceed with the assessments, but had added language indicating their signatures were not voluntary, and had refused to consent to the release of information between the ESU and the programs it uses to conduct the evaluations. As such, the ESU did not consider the consent forms sufficient to permit the assessments to be performed and the evaluations to be completed. There was evidence that DHHS had not signed the consent forms, but that pertinent regulations precluded DHHS from signing such consents for children who are wards of the State.

After hearing the evidence, the court declined to make any finding of contempt and instead decided to appoint an "educational surrogate" to authorize the necessary consents. The following colloquy took place on the record:

THE COURT: . . . I'm going to appoint [an] educational surrogate for all three children. There are no limitations on that whatsoever . . . .

. . . .

[Parents' counsel]: — I assume before you appoint . . . a surrogate, you'll give a short time for [the parents] to sign [the] documents?

THE COURT: Okay. No. We're done. She's a surrogate. . . .

[Parents' counsel]: Okay.

THE COURT: Because I'm not going to come back here when they refuse to do something in the future.

. . . .

. . . I'm not going to find anyone in contempt. I don't think it's necessary.

. . . .

. . . I'm going to appoint [an attorney] as the surrogate to have educational rights for all three children.

As I understand from the testimony presented today, that will allow the evaluations to go through. . . .

I believe the adjudications are up on appeal. I think we have a status hearing set just to monitor how the appeal is progressing.

. . . .

. . . We'll schedule it for August 4th at 2:00 p.m. And if we're still waiting for an appellate decision at that time, we'll certainly entertain a motion to continue that out probably for another month or so to monitor the ruling.

All prior orders not in conflict are continued. Court's adjourned.

After the show cause hearing, the court entered an order in each child's case which provided that a particular attorney was "appointed as educational surrogate for the minor child herein and shall have all educational rights for the minor child."

Robert and Veronica timely appealed from the May 2016 orders appointing an educational surrogate in each child's case. We moved these appeals to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

## ASSIGNMENTS OF ERROR

Robert and Veronica assign, consolidated and restated, that the juvenile court erred in (1) ordering them to show cause why they should not be held in contempt, and subsequently appointing an educational surrogate, while appeals of the adjudications were pending in the Court of Appeals and (2) appointing an educational surrogate in a civil contempt proceeding without giving them an opportunity to purge their contempt by completing the assessment consent forms.

---

[1] Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.[2]

[2] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[3]

## ANALYSIS

### ORDERS APPOINTING EDUCATIONAL SURROGATE WERE FINAL ORDERS

[3] The State argues the orders appointing an educational surrogate were not final, appealable orders. In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[4]

Neb. Rev. Stat. § 43-2,106.01(1) (Reissue 2016) gives appellate courts jurisdiction to review "[a]ny final order or judgment entered by a juvenile court . . . ." No one argues that the orders appointing an educational surrogate are judgments under Neb. Rev. Stat. § 25-1301 (Reissue 2016), so whether we have jurisdiction to review the juvenile court's orders depends on whether Robert and Veronica have appealed from final orders.

[4,5] Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), the three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered.[5] Because

---

[2] *In re Interest of Danaisha W. et al.*, 287 Neb. 27, 840 N.W.2d 533 (2013).

[3] *Id.*

[4] *Id.*

[5] *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012); *In re Adoption of Amea R.*, 282 Neb. 751, 807 N.W.2d 736 (2011).

a proceeding before a juvenile court is a "special proceeding" for appellate purposes,[6] the pertinent inquiry is whether the order appointing an educational surrogate affected a substantial right. We conclude it did.

[6,7] A substantial right is an essential legal right, not a mere technical right.[7] Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed.[8] This court has considered both the object and duration of the orders at issue here, and we conclude the orders affect a substantial right.

[8] The object of the orders appointing an educational surrogate is the fundamental right of Robert and Veronica to direct the education of their children. The U.S. Supreme Court has recognized parents have a fundamental liberty interest in directing the education of their children.[9] And this court has recognized there "can be no doubt that the object of [an order prohibiting a parent from homeschooling her child] is of sufficient importance to affect a substantial right."[10] Here, although the educational surrogate was appointed to address the parents' refusal to consent to court-ordered assessments, the orders gave the surrogate "all educational rights for the minor child" and the court clarified on the record that "[t]here are no limitations on [the appointment] whatsoever . . . ."

[6] *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55 (2008).

[7] *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015).

[8] *Id.*

[9] See, *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); *Washington v. Glucksberg*, 521 U.S. 702, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S. Ct. 571, 69 L. Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923).

[10] *In re Interest of Cassandra B. & Moira B.*, 290 Neb. 619, 625, 861 N.W.2d 398, 403 (2015).

We are persuaded on this record that the object of the orders appointing an educational surrogate is of sufficient importance to affect a substantial right.

[9] The second prong of the substantial right analysis requires consideration of the length of time over which the parent-child relationship may reasonably be expected to be disturbed.[11] Orders which temporarily suspend a parent's custody, visitation, or education rights for a brief period of time do not affect a substantial right and are therefore not appealable.[12]

[10] Here, neither the language of the orders appointing the educational surrogate nor the court's remarks on the record denote a temporary interruption of the parents' rights to direct the education of their children. To the contrary, the court's remarks indicate the educational surrogate was appointed with "no limitations on that whatsoever" and the court wanted the appointment to continue in case the parents "refuse to do something in the future." Because there was no limit on the duration or scope of the educational surrogate's appointment, we conclude these were not temporary orders, but, rather, orders which affected the parents' substantial right to direct the education of their child.[13] The orders were therefore final orders, and we proceed to consider the errors assigned on appeal.

Robert and Veronica challenge the appointment of an educational surrogate on two grounds. First, they argue the juvenile court lacked jurisdiction to issue or rule upon the orders to show cause while the adjudications were pending on appeal. Next, they argue the orders appointing an educational surrogate were improper sanctions for civil contempt, because they were not afforded "an opportunity to purge their contempt by signing the testing authorization forms." We consider each argument in turn.

---

[11] *Id.*

[12] *Id.*

[13] See *id.*

Juvenile Court Had Jurisdiction
to Issue and Rule Upon
Orders to Show Cause

Robert and Veronica argue the juvenile court was without power to issue orders to show cause or appoint an educational surrogate while their appeals of the adjudications were pending before the Court of Appeals. They contend the appeal divested the juvenile court of jurisdiction to issue or rule upon the orders to show cause. In this regard, Robert and Veronica do not contend that the surrogate was unnecessary or that the ordered assessments were unrelated to the basis for adjudication. Nor do they challenge the juvenile court's authority to appoint an educational surrogate generally. Rather, they assign and argue that because the adjudication appeals were pending, the juvenile court lacked authority to take any action.

[11-15] Nebraska case law generally holds that once an appeal has been perfected, the trial court is divested of its jurisdiction to hear a case involving the same matter between the same parties.[14] However, Neb. Rev. Stat. § 43-2,106 (Reissue 2016) provides in relevant part:

> When a juvenile court proceeding has been instituted before a county court sitting as a juvenile court, the original jurisdiction of the county court shall continue until the final disposition thereof and *no appeal shall stay the enforcement of any order entered in the county court*. After appeal has been filed, the appellate court, upon application and hearing, may stay any order, judgment, or decree on appeal if suitable arrangement is made for the care and custody of the juvenile. The county court shall continue to exercise supervision over the juvenile until a hearing is had in the appellate court and the appellate court enters an order making other disposition.

---

[14] *In re Interest of Tabatha R.*, 255 Neb. 818, 587 N.W.2d 109 (1998).

(Emphasis supplied). In *In re Interest of Jedidiah P.*,[15] we explained that although a juvenile court retains jurisdiction over a juvenile while an appeal is pending, such continuing jurisdiction is not without limits. For example, the continuing jurisdiction of a juvenile court pending an appeal from an adjudication does not include the power to terminate parental rights[16] or to enter a permanent dispositional order.[17] As such, the extent of the juvenile court's jurisdiction must be determined by the facts of each case.[18] The question presented here is whether, while the orders of adjudication were pending on appeal, the juvenile court had continuing jurisdiction to issue and rule upon orders to show cause seeking enforcement of its previous orders requiring a speech and language assessment. We conclude it did.

[16] The juvenile court's adjudication orders placed custody of the children with DHHS and, among other things, ordered that assessments be conducted by the ESU. When the State learned the assessments had not yet occurred because DHHS and the parents had refused to complete the necessary forms, the State sought to enforce the court's orders by filing an affidavit and application for order to show cause in each case. Juvenile courts, whether separate juvenile courts or county courts sitting as juvenile courts, are courts of record with the statutory authority to punish contemptuous conduct.[19] Section 43-2,106 expressly provides that "no appeal shall stay the enforcement of any order entered in the county court [sitting as a juvenile court]." Because the proceedings were enforcing

---

[15] *In re Interest of Jedidiah P.*, 267 Neb. 258, 673 N.W.2d 553 (2004).

[16] *Id.*, citing *In re Interest of Joshua M. et al.*, 4 Neb. App. 659, 548 N.W.2d 348 (1996), *reversed in part on other grounds* 251 Neb. 614, 558 N.W.2d 548 (1997).

[17] *Id.*, citing *In re Interest of Andrew H. et al.*, 5 Neb. App. 716, 564 N.W.2d 611 (1997).

[18] *Id.*

[19] *In re Interest of Thomas M.*, 282 Neb. 316, 803 N.W.2d 46 (2011).

previous orders of the juvenile court, we find no merit to the parents' contention that the juvenile court lacked authority to issue or rule upon the orders to show cause while the orders of adjudication were on appeal.

### ORDERS APPOINTING EDUCATIONAL SURROGATE WERE NOT PREMISED ON FINDING OF CONTEMPT

Robert and Veronica argue the juvenile court erred in imposing "an unconditional punishment of removal of educational rights in a civil contempt proceeding, without giving [them] an opportunity to purge their contempt by signing the testing authorization forms. The parents argue that the court imposed a punitive sanction in a civil contempt proceeding, and they suggest a proper sanction for civil contempt "should have allowed them to purge the contempt by . . . sign[ing] the [authorization] forms for the tests."[20]

This assignment of error assumes the court ordered the appointment of an educational surrogate as a sanction for a finding of civil contempt. But that is incorrect. The record shows the court specifically declined to find either the parents or DHHS in contempt of court for failing to complete the necessary authorizations. The orders appointing an educational surrogate were not imposed as a sanction for civil contempt, because there was no finding of contempt made by the court. We find this assignment of error is factually unsupported and therefore lacks merit.

### CONCLUSION

For the foregoing reasons, the orders of the juvenile court are affirmed.

AFFIRMED.

---

[20] Brief for appellants at 9.