Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/03/2023 09:10 AM CDT

In re Interest of Sayrah P., a child
under 18 years of age.
State of Nebraska, appellee, v.
Sayrah P., appellant.

___ N.W.2d ___

Filed November 3, 2023.    No. S-23-071.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.

2. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

3. **Jurisdiction: Appeal and Error.** When an appellate court is without jurisdiction to act, the appeal must be dismissed.

4. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order or judgment entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders.

5. **Juvenile Courts: Appeal and Error.** A proceeding before a juvenile court is a special proceeding for appellate purposes.

6. **Final Orders: Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.

7. **Final Orders: Appeal and Error.** A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which the appeal is taken.

8. ____: ____. It is not enough that a right itself be substantial; the effect on that right must also be substantial.

9. **Final Orders.** Whether the effect of an order is substantial depends on whether it affects with finality the rights of the parties in the subject matter.

10. **Parental Rights: Final Orders: Time.** Whether an order affects a substantial right of a parent is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed.

11. **Parental Rights: Final Orders: Time: Appeal and Error.** Orders which temporarily suspend a parent's custody, visitation, or education rights for a brief period of time do not affect a substantial right and therefore are not appealable. A similar analysis has been conducted in analyzing a juvenile's right to stay in the home.

Appeal from the Separate Juvenile Court of Sarpy County: Sarah M. Moore, Judge. Appeal dismissed.

Dennis P. Marks, Deputy Sarpy County Public Defender, for appellant.

Gary Brollier, Deputy Sarpy County Attorney, Andrew T. Erickson, and Lauren S. Evans, Senior Certified Law Student, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

Following an altercation with law enforcement, 16-year-old Sayrah P. was screened by a juvenile probation officer. The officer found that Sayrah qualified for an alternative to detention, and Sayrah was sent home with her mother with an order for electronic monitoring. Sayrah received a hearing with the juvenile court 2 days after the initial screening, during which electronic monitoring at home was ordered to continue. Sayrah was noncompliant with her electronic monitoring, and a month later, she was ordered to "staff secure" detention. Sayrah appeals from both the order for electronic monitoring and the order for staff secure detention. Sayrah

does not appeal from final, appealable orders, and accordingly, we dismiss.

## FACTUAL BACKGROUND

On January 1, 2023, there was an altercation at a Sarpy County hotel between Sayrah and law enforcement. An oncall probation officer was called to the scene, and following completion of the "Nebraska Juvenile Detention Screening Instrument," the officer found that "[f]urther supervision of such juvenile is a matter of immediate and urgent necessity for the protection of such juvenile." The probation officer authorized the return of Sayrah to her parent, subject to electronic monitoring.

A juvenile petition was filed against Sayrah on January 3, 2023, alleging three law violations, including minor in possession of alcohol, obstructing a police officer, and attempted third degree assault on an officer. A hearing was held that same day. A probation officer, other than the one who completed the January 1 screening instrument, testified at the hearing.

In her testimony, the probation officer indicated that she would have filled out the instrument slightly differently. Her testimony included questioning and discussion about the basis relied upon to support Sayrah's alternative to detention—that "[f]urther supervision of such juvenile is a matter of immediate and urgent necessity for the protection of such juvenile." Specifically, the probation officer noted that she would have found that further supervision of Sayrah was needed upon "urgent necessity for [the] protection of the community, safety of the community." Ultimately, the testifying officer indicated that she would defer to the court as to whether electronic monitoring or detention was more appropriate for Sayrah.

Following this hearing, the juvenile court found that electronic monitoring as an alternative to detention was "appropriate," but noted that Sayrah was a "physical safety [threat] to person[s] in the community and that they would be seriously threatened, but for [Sayrah's] being on [an] electronic monitor."

Arraignment was set for January 30, 2023, but was expedited due to concerns about Sayrah's behavior, including failing to charge her electronic monitoring device and removing the device. After this January 23 arraignment, the court ordered the juvenile probation officer to "make applications for shelter care due to the need for possible crisis stabilization in the future as an alternative to detention." But ultimately, the court ordered that Sayrah remain on electronic monitoring as an alternative to detention. The court further ordered that Sayrah "follow the rules of her placement with her mother, and charge her electronic monitor."

Four days later, on January 27, 2023, Sayrah moved the court to schedule a hearing "to review whether the use of an electronic monitor as an alternative to detention is necessary." That hearing was held on February 1, after which the court found that Sayrah had "been non-compliant with court orders, ha[d] cut her electronic monitor and left the residence without permission, and was suspended for fighting at school." The court further noted in its order that Sayrah had been accepted to the "Boys Town Shelter Care," but was ninth on the waiting list. The court noted that it had

> previously found . . . that the juvenile qualified for an alternative to detention, specifically electronic monitoring, to which the juvenile has failed to comply with. The Court finds that her failure to comply with Court Orders, specifically an alternative to detention (electronic monitoring) designed to keep her safely within the community, coupled with her ongoing aggressive behaviors, places the community at risk. The Court finds that the physical safety of persons within the community would be seriously threatened if she were not detained today.

In keeping with those findings, the juvenile court ordered that Sayrah be sent to the Sarpy County juvenile detention center until a spot opened for her at the Boys Town Shelter.

Sayrah appealed.

ASSIGNMENTS OF ERROR

On appeal, Sayrah assigns the following as errors: (1) the record is "totally devoid of any facts finding that . . . Sayrah would come under the court's jurisdiction based on the offenses for which she was charged"; (2) the juvenile court erred by not finding that the original basis for detention—"the 'protection of the juvenile'"—was not a lawful basis to commence a detention screening; (3) plain error is evidenced by the court's allowing the alternative to detention for Sayrah in the absence of a finding of probable cause that she committed the alleged law violations; (4) the juvenile court erred in finding, on January 3, 2023, that Sayrah constituted a physical safety threat to the community because the record was devoid of any facts supporting this conclusion; (5) the juvenile court erred by allowing, on January 3, probation to verbally modify the authorization for the use of an alternative to detention in the middle of a detention review hearing; (6) the juvenile court erred, on February 1, in "ordering Sayrah into staff secure detention at a hearing to expedite when no evidence was offered or received, no sworn testimony was taken, and the Court instead relied on judicial notice which included another hearing with unsworn testimony and evidence at the January 23 . . . arraignment hearing"; (7) the juvenile court erred by converting the hearing to expedite to a detention hearing without prior notice to Sayrah; (8) the juvenile court lacked statutory authority to order Sayrah into staff secure detention at the hearing on the motion to expedite on February 1; (9) the juvenile court erred by finding, on February 1, that Sayrah's "'failure to comply with the court orders, specifically an alternative to detention (electronic monitoring) designed to keep her safely within the community, coupled with her ongoing aggressive behaviors, places the community at risk'" (emphasis omitted); (10) the juvenile court erred in finding, on February 1, that the physical safety of persons within the community would be seriously threatened if Sayrah were not detained; and (11) the juvenile court should not have

substituted judicial notice for unsworn testimony and evidence that was neither offered nor received in depriving the juvenile of her freedom.

## STANDARD OF REVIEW

[1] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.[1]

## ANALYSIS

[2-4] This case presents a question of appellate jurisdiction. In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[2] When an appellate court is without jurisdiction to act, the appeal must be dismissed.[3] For an appellate court to acquire jurisdiction of an appeal, there must be a final order or judgment entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders.[4]

Under Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2022), the four types of final orders that may be reviewed on appeal are (1) an order which affects a substantial right in an action and which in effect determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered, and (4) an order denying a motion for summary judgment when such motion is based on the assertion of sovereign immunity or the immunity of a government official.[5]

---

[1] *In re Interest of Zachary B.*, 299 Neb. 187, 907 N.W.2d 311 (2018).

[2] *In re Interest of Manuel C. & Mateo S.*, 314 Neb. 91, 988 N.W.2d 520 (2023), *modified on denial of rehearing* 314 Neb. 580, 991 N.W.2d 305; *In re Interest of Zachary B., supra* note 1.

[3] *In re Interest of Manuel C. & Mateo S., supra* note 2.

[4] *Id*.

[5] *Id*.

[5] We have previously indicated that a proceeding before a juvenile court is a special proceeding for appellate purposes.[6] Thus, we focus our analysis on the second category of final orders set forth in § 25-1902. As provided by that section, to be final and appealable, an order in a special proceeding must affect a substantial right.[7]

[6-9] We have defined a "substantial right" in various ways. We have stated that a substantial right is an essential legal right, not a mere technical right.[8] We have also explained that a substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which the appeal is taken.[9] We have further held that it is not enough that a right itself be substantial; the effect on that right must also be substantial.[10] Moreover, whether the effect of an order is substantial depends on whether it affects with finality the rights of the parties in the subject matter.[11]

[10,11] This court has further observed that whether an order affects a substantial right of a parent is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed.[12] We have held that orders which temporarily suspend a parent's custody, visitation, or education rights for a brief period of time do not affect a substantial right and therefore are not appealable.[13] A similar analysis

---

[6] *Id.*

[7] *Id.*

[8] *Id.*; *In re Interest of Zachary B., supra* note 1.

[9] *In re Interest of Manuel C. & Mateo S., supra* note 2.

[10] *In re Interest of Zachary B., supra* note 1.

[11] *Id.*

[12] *Id.*

[13] *Id.*

has been conducted in analyzing a juvenile's right to stay in the home.[14]

With these principles in mind, we turn to the finality of the court's orders in continuing Sayrah's electronic monitoring at her home and later in ordering Sayrah to detention.

Sayrah's electronic monitoring began on January 1, 2023, when she was returned to her mother's custody, subject to the wearing of an electronic monitor, pending an adjudication hearing on the three law violations. While counsel suggests otherwise, we plainly find this order of electronic monitoring to be a form of an alternative to detention, and not itself detention.[15] The juvenile code provided Sayrah with an opportunity to challenge this monitoring order, both as an initial matter,[16] and subsequently.[17] Thus, this order was subject to review on an ongoing basis. We cannot conclude that this order affected a substantial right when Sayrah was allowed to return to her mother's home and the condition of Sayrah's electronic monitoring was subject to periodic review, as well as review on demand. In addition, Sayrah is statutorily entitled to adjudication of her law violations within 6 months.[18] We cannot conclude that this order substantially affected a substantial right, and thus, it was not final.

Additionally, we need not address Sayrah's assertion on appeal that probation erred when it found that she needed to be detained for her own protection, rather than for the community's protection. But as we noted above, Sayrah was not detained; instead, she was subjected to an alternative to detention, and hence, any error in the standard utilized is not implicated here.

---

[14] See *id.*

[15] See Neb. Rev. Stat. § 43-245(3) (Cum. Supp. 2022).

[16] See Neb. Rev. Stat. § 43-253(3) (Cum. Supp. 2022).

[17] See Neb. Rev. Stat. § 43-256 (Reissue 2016).

[18] See Neb. Rev. Stat. § 43-271(1)(b) (Reissue 2016).

We next turn to Sayrah's appeal of the order sending her to the Sarpy County juvenile detention center until a spot opened for her at the Boys Town Shelter. This order differs from the order for electronic monitoring in that it envisioned removing Sayrah from her mother's custody and placing her in detention. But we still conclude that the record shows that Sayrah's detention was designed to be temporary and was anticipated to be for a short period of time, lasting only until a spot at the Boys Town Shelter was available. The record shows that when the detention order was entered, Sayrah had already been accepted to the Boys Town Shelter and was ninth on the waiting list. We cannot conclude that on these facts, a stay in detention of such a short duration substantially affected a substantial right. As such, we conclude that this order also was not final.

## CONCLUSION

Sayrah's appeal is dismissed for lack of a final, appealable order.

APPEAL DISMISSED.